Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel ....818.562.5800
Fax....818.562.5810

*Attorneys for Defendants,*
County of Los Angeles (inclusive of the "Los Angeles Department of Children and Family Services," erroneously named as a distinct entity), Escobedo, Espinoza, Ruben Jimenez, Sandra Jimenez, Lara, Lopez, Luna, Mejia, Morales, Pacheco, Ramirez, Ronces, Salas, Silva, and Simons.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KARLA ARANDA GARCIA, *et al.*,

Plaintiffs,

v.

COUNTY OF LOS ANGELES, *et al.*,

Defendants.

Case No. 2:19-CV-1770-RGK-RAO
Hon. R. Gary Klausner (Dist. Judge)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Date .................... October 28, 2019
Time ................... 9:00 a.m.
Location ............. Roybal Federal Bldg.
Courtroom 850

Complaint Filed: August 15, 2018
FAC Filed: May 8, 2019
Trial: March 31, 2020

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 28, 2019, at 9:00 a.m., in Courtroom 850 of the Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable R. Gary Klausner, Defendants County of Los Angeles (inclusive of the "Los Angeles Department of Children and Family Services," erroneously named as a distinct entity), Escobedo, Espinoza, Ruben Jimenez, Sandra Jimenez, Lara, Lopez, Luna, Mejia, Morales, Pacheco, Ramirez, Ronces, Salas, Silva, and Simons ("Defendants," collectively) will and

hereby do move the Court for an order dismissing the Second Amended Complaint (SAC) filed by Plaintiffs Alfredo Aranda, Karla Aranda, and B.A. ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate on the grounds identified below.

1. Plaintiffs exceeded the scope of permissible amendments. After the Court partially granted the two prior motions to dismiss the First Amended Complaint (FAC), the Court permitted leave to amend a single claim: the mandatory duty claim presented in the SAC's seventh claim for relief. However, Plaintiffs added numerous factual details to the SAC that are completely unrelated to the mandatory duty claim.
2. The first claim for relief, alleged under 42 U.S.C. § 1983 and the Fourth Amendment, fails to state a claim because (i) Ronces is absolutely immune for initiating dependency proceedings, (ii) materiality has not been sufficiently alleged, and (iii) causation has not been sufficiently alleged.
3. The third claim for relief, alleged under 42 U.S.C. § 1983 and the Fourth Amendment, fails to state a claim because (i) Pacheco and Espinoza are immune for testifying in the juvenile court and the reports to DCFS did not cause any procedural due process injury on the facts alleged; (ii) the factual allegations against Pacheco and Espinoza are too speculative to permit a procedural due process analysis; (iii) Ronces is absolutely immune for filing a dependency petition; (iv) the facts do not permit an inference that Ronces' act of filing a dependency petition caused a procedural due process injury; and (v) Plaintiffs' conclusion that Ramirez fabricated evidence is not supported by the allegations.
4. The fourth and fifth claims for relief, negligence and negligence per se claims fail to state a claim because (i) they are barred by the California Government Claims Act's immunity provisions; (ii) they are time-barred due to failure to allege compliance with the Claims Act's presentation

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

requirements; (iii) there are insufficient factual allegations to support an inference that any Defendant violated a mandatory duty, as required by the negligence per se claim, because the facts only concern Lara and no facts suggest how she violated the litany of CDSS MPP sections or SDM provisions cited; and (iv) the allegations in support of the negligence claim are impermissibly conclusory.

5. The sixth claim for relief, for intentional infliction of emotional distress (IIED), fails to state a claim because the Court did not grant leave to amend such claim.
6. The seventh claim for relief, for breach of mandatory duties, fails to state a claim against Morales, Luna, Silva, Mejia, Ruben Jimenez, Sandra Jimenez, Escobedo, Simons, Salas, Lopez, or Ronces because none of their actions fall within the scope of the mandatory duties alleged.
7. The eighth claim for relief, a claim under the Bane Act, fails to state a claim against Pacheco or Espinoza because the conduct upon which the claims are based (reporting abuse to DCFS and testifying in juvenile court) are actions for which Pacheco and Espinoza are immune under California's Child Abuse and Neglect Reporting Act (CANRA) and California's litigation privilege. Moreover, to the extent that the Court has previously ruled this claim is derivative of the Fourteenth Amendment claims, this claim must be dismissed if the Fourteenth Amendment claim is found to be not well-pleaded.

This Motion is made and based upon the SAC, the Court file, the Memorandum Points and Authorities submitted herewith, the hearing on this matter, and any matters upon which the Court may take judicial notice. This motion is made following the conference of counsel pursuant to L.R. 7-3, which began when conferring on the now-mooted motion for judgment on the pleadings (ECF No. 70) on August 1, 2019 and August 7, 2019, and continued until September 26, 2019.

///

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

DATED: September 29, 2019

**PETERSON • BRADFORD • BURKWITZ**

By: */s/ Ryan A. Graham, Esq.*
Avi Burkwitz, Esq.
Ryan A. Graham, Esq.,
*Attorneys for Defendants*
County of Los Angeles (inclusive of the "Los Angeles Department of Children and Family Services," erroneously named as a distinct entity), Escobedo, Espinoza, Ruben Jimenez, Sandra Jimenez, Lara, Lopez, Luna, Mejia, Morales, Pacheco, Ramirez, Ronces, Salas, Silva, and Simons.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## TABLE OF CONTENTS

**I. INTRODUCTION** ........ **11**

**II. JUVENILE PROCESS** ........ **12**

**III. STATEMENT OF FACTS** ........ **13**

**IV. ARGUMENT** ........ **15**

A. The first claim (§ 1983, 4th Amendment) fails to state a claim. ........ 16

B. The third claim (§ 1983, 14th Amendment) fails to state a claim. ........ 20

C. The fourth and fifth claims (negligence/per se) fail to state claims. ........ 23

D. The sixth claim (IIED) fails to state a claim. ........ 28

E. The seventh claim (mandatory duty) fails to state a claim. ........ 28

F. The eighth claim (Bane Act) fails to state a claim. ........ 29

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## TABLE OF AUTHORITIES

**Federal Cases (Supreme Court)**

*Franks v. Delaware*,
438 U.S. 154 (1978) ........ 17

*Graham v. Connor*,
490 U.S. 386 (1989) ........ 19

*Kalina v. Fletcher*,
522 U.S. 118 (1997) ........ 18

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ........ 21

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ........ 20

**Federal Cases (Circuit Courts of Appeals)**

*Beltran v. Santa Clara Cty.*,
514 F.3d 906 (9th Cir. 2008) (en banc) ........ 18

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2006) ........ 20, 21

*Ewing v. City of Stockton*,
588 F.3d 1218 (9th Cir. 2009) ........ 23

*Greene v. Camreta*,
588 F.3d 1011 (9th Cir. 2009), *vacated in part as moot by* 563 U.S. 692 (2011). 18

*Johnson v. Duffy*,
588 F.2d 740 (9th Cir. 1978) ........ 17

*KRL v. Moore*,
384 F.3d 1105 (9th Cir. 2004) ........ 17

*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988) ........ 16

*Mendez v. Cty. of Los Angeles*,
897 F.3d 1067 (9th Cir. 2018) ........................................................................ 17

*Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*,
812 F.2d 1154 (9th Cir. 1987) ................................................................... 17, 20

*Mishler v. Clift*,
191 F.3d 998 (9th Cir. 1999) .......................................................................... 18

*Portman v. Cty. of Santa Clara*,
995 F.2d 898 (9th Cir. 1993) .......................................................................... 20

*United States v. Anderson*,
453 F.2d 174 (9th Cir. 1971) .......................................................................... 19

*Wallis v. Spencer*,
202 F.3d 1126 (9th Cir. 2000) ............................................................ 21, 22, 25

**Federal Cases (District Courts)**

*Larry O. Crother, Inc. v. Lexington Ins. Co.*,
No. 2:11-CV-00138-MCE, 2011 WL 1084201(E.D. Cal. Mar. 21, 2011)........... 16

*Watson v. Cty. of Santa Clara*,
468 F. Supp. 2d 1150 (N.D. Cal. 2007) ........................................................... 30

**State Cases (Supreme Court)**

*Cynthia D. v. Superior Court*,
5 Cal. 4th 242 (1993) ............................................................................... 12, 13

*In re Robin M.*,
21 Cal. 3d 337 (1978) ..................................................................................... 12

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal. 5th 648 (2017) ...................................................................................... 28

*Moore v. Conliffe*,
7 Cal. 4th 634 (1994) ...................................................................................... 30

*Oren Royal Oaks Venture v. Greenberg*,
42 Cal. 3d 1157 (1986) .................................................................................... 30

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

*State of California v. Superior Court of Kings County* (*Bodde*),
32 Cal. 4th 1234 (2004) ........................................................................26, 27

**State Cases (Appellate)**

*Alicia T. v. County of Los Angeles*,
222 Cal. App. 3d 869 (1990) ........................................................................25

*Christina C. v. Cty. of Orange*,
220 Cal. App. 4th 1371 (2013) ........................................................................26

*Connelly v. Cty. of Fresno*,
146 Cal. App. 4th 29 (2006) ........................................................................26, 27

*Cotton v. Cotton*,
No. A139072, 2014 WL 5488828 (Cal. Ct. App. Oct. 30, 2014)..........................30

*Cuff v. Grossmont Union High Sch. Dist.*,
221 Cal. App. 4th 582 (2013) ........................................................................30

*In re A.J.*,
No. D059473, 2011 WL 6210669 (Cal. Ct. App. Dec. 13, 2011)..........................24

*In re Fred J.*,
89 Cal. App. 3d 162 (1979) ........................................................................12

*In re Jessica C.*,
93 Cal. App. 4th 1027 (2001) ........................................................................12

*In re T.V.*,
217 Cal. App. 4th 126 (2013) ........................................................................12

*Jacqueline T. v. Alameda Cty. Child Protective Servs.*,
155 Cal. App. 4th 456 (2007) ........................................................................24

*Jenkins v. County of Orange*,
212 Cal. App. 3d 278 (1989) ........................................................................25

*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002) ........................................................................30

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

*Robbins v. Hamburger Home for Girls*,
32 Cal. App. 4th 671 (1995) .......... 30

*Skerston v. Sheehan*,
No. G045401, 2012 WL 610817 (Cal. Ct. App. Feb. 24, 2012) .......... 30

**Statutes (State)**

California Government Code § 815.2(b) .......... 24, 25

California Government Code § 820.2 .......... 24, 25, 26

California Government Code § 820.8 .......... 25, 26

California Government Code § 821.6 .......... 24, 25

California Government Code § 911.2 .......... 27

California Government Code § 911.4 .......... 27

California Government Code § 946.6 .......... 28

California Penal Code § 11164 .......... 30

California Penal Code § 11165.7 .......... 30

California Penal Code § 11172 .......... 30

California Penal Code § 830.1 .......... 30

California Welfare & Institutions Code § 300 .......... 12

California Welfare & Institutions Code § 315 .......... 12

California Welfare & Institutions Code § 325 .......... 12

California Welfare & Institutions Code § 332 .......... 12

California Welfare & Institutions Code § 334 .......... 12

California Welfare & Institutions Code § 355 .......... 13

California Welfare & Institutions Code § 356 .......... 13

California Welfare & Institutions Code § 358 .......... 13

California Welfare & Institutions Code § 361 .......... 13

California Welfare & Institutions Code § 820.21 .......... 26

**State Rules**

California Rule of Court 5.674 .......... 12, 13

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

California Rule of Court 5.676 .......... 12
California Rule of Court 5.682 .......... 12
California Rule of Court 5.684 .......... 13

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

10
DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
Case No. 2:19-CV-1770-RGK-RAO

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For well over one year, Plaintiffs' story about the seizure of Plaintiff B.A from his parents, Plaintiffs Karla Aranda ("Karla") and Alfredo Aranda ("Alfredo"), and their theories of liability have remained constant. Until the SAC, the factual underpinnings of Plaintiffs' claims could be summarized as deputies falsely reporting domestic violence between Karla and Alfredo to the County's Department of Children and Family Services (DCFS) and social workers misrepresenting facts in juvenile court filings. But the SAC is an entirely new lawsuit. In the face of an order granting limited leave to amend their complaint, Plaintiffs' story has suddenly and impermissibly changed, well beyond the permissible scope of amendment. The deputies now stand accused of partnering with a neighboring jurisdiction to hustle the Aranda family; B.A. has now allegedly been abused in multiple foster placements; and social workers have allegedly turned a blind eye to this abuse.

When the Court decided two prior motions to dismiss the First Amended Complaint (FAC), it granted leave to amend a single claim—mandatory duty—to rectify a narrow problem: that the "regulatory codes [supporting the mandatory duty claim] are not identified in Plaintiffs' claim." ECF No. 67, at 11. But Plaintiffs' revisions do far more than simply identify regulatory codes. Without a court order authorizing such amendments, they have no legal effect. That Plaintiffs waited over a year to present these amendments is highly suggestive of their true intent—to surprise Defendants with the true nature of their case on the eve of the discovery cutoff. Nevertheless, these revisions do nothing but make arguments in the now-mooted motion for judgment on the pleadings ever more salient, which are re-asserted here because Plaintiffs also waited to file the SAC until after Defendants filed the motion for judgment on the pleadings. Defendants request the Court dismiss the SAC in its entirety, and without any further leave to amend.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## II. JUVENILE PROCESS

***Initiation of proceedings***. The juvenile dependency system "begins with" Welfare & Institutions Code § 300,[1] which lists specific situations that will bring a child within the jurisdiction of the juvenile court. *Cynthia D. v. Superior Court*, 5 Cal. 4th 242, 247 (1993). Proceedings to declare a child a dependent of the court are initiated "by the filing with the court, by the social worker, of a petition, in conformity with the requirements of [§§ 325–342]." § 325. Dependency petitions must be verified. § 332. The dependency petition must contain a concise statement of facts establishing at least one of § 300's grounds for juvenile court jurisdiction and provide notice of the specific factual allegations against a parent. *In re Jessica C.*, 93 Cal. App. 4th 1027, 1037 (2001); *In re T.V.*, 217 Cal. App. 4th 126, 131 (2013). "If the parent believes that the allegations, as drafted, do not support a finding that the child is 'within' one of the descriptions of section 300, the parent has the right to bring a motion 'akin to a demurrer.'" 93 Cal. App. 4th at 1037 (quoting *In re Fred J.*, 89 Cal. App. 3d 162, 175–77 (1979)). Otherwise, parents proceed to "litigate[] the merits." *Id.* Parents enter a plea at an initial hearing or at the merits stage. California Rules of Court (CRC) 5.674(a), 5.682(b). After the petition is filed, the juvenile court must set the petition for a "jurisdiction hearing"—*i.e.*, a hearing on the petition's allegations—within 30 days (non-detention cases) or 15 days (detention cases). § 334.

Because the filing of a dependency petition need not necessarily involve the removal of a child from its home, additional procedures are required when a child has been detained: a "detention hearing" must be held at the end of the next judicial day after a minor is detained to ascertain whether the minor need be detained pending the jurisdiction hearing. § 315; *In re Robin M.*, 21 Cal. 3d 337, 340 n.2 (1978). Detaining a child requires a prima facie showing that the child "is described by section 300" and a finding that "continuance in the home of the parent or guardian is contrary to the child's welfare." CRC 5.676(a). Parties can challenge the prima facie finding by

[1] All section (§) citations within Part II are to the California Welfare & Institutions Code.

"request[ing] that evidence of the prima facie case be presented," resulting in a special evidentiary hearing or expedited jurisdiction hearing. CRC 5.674(e).

***Adjudication.*** Adjudicating a child as a dependent is a bifurcated process involving two separate hearings. The merits of the petition are determined at a "jurisdiction hearing," where the juvenile court "determines whether the allegations in the petition that the minor comes within section 300, and thus within the juvenile court's jurisdiction, are true." *Cynthia D.*, 5 Cal. 4th at 248; § 355. The social worker/agency has the burden of establishing jurisdictional findings by a preponderance of the evidence. *Id.*; § 355(a). If the allegations are not found to be true, the juvenile court must dismiss the petition and return the child to its home. CRC 5.684(g); §§ 356, 361. If the allegations are found true, the court "must proceed to a disposition hearing." CRC 5.684(e), (f); §§ 356, 358. At the disposition hearing, the juvenile court considers whether the child may remain with the parents or whether the child must be removed. *Cynthia D.*, 5 Cal. 4th at 248; § 361(c), (d).

## III. STATEMENT OF FACTS

B.A. is the son of Karla and Alfredo. ECF No. 82 (SAC), ¶ 65.[2] The family lived in Maywood, which is within the patrol area of two Los Angeles Sheriff's Department (LASD) deputies—Pacheco and Espinoza—who made harassing comments to Alfredo and Karla. ¶ 66. In October 2013, Alfredo complained to LASD. ¶ 67. On December 28, 2013, the deputies reported a domestic violence (DV) incident between Karla and Alfredo to DCFS. ¶ 68. Plaintiffs contend the incident did not actually occur. *Id.* A DCFS investigation followed. ¶¶ 69–72. To avoid B.A. being removed, Karla agreed to take DV classes and Alfredo moved out. ¶ 71.

On May 5, 2014, the deputies called DCFS again to report another DV incident that allegedly did not occur. ¶ 73. DCFS removed B.A. from Karla the same day. ¶ 75. On May 8, 2014, DOE #1 filed a juvenile dependency petition and detention report based on the DV reports. ¶ 80. Pacheco and Espinoza testified falsely at the hearing on

[2] Within this motion, all paragraph citations (¶) are to the SAC, ECF NO. 82.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

the merits of the petition. ¶ 81. The petition was sustained, but B.A. was returned to Karla on the condition that Karla divorce Alfredo, that the parents comply with a restraining order, and complete court-ordered programs. ¶ 81. On June 3, 2015, the Huntington Park Police Department (HPPD) searched the homes of Karla, Alfredo, and Alfredo's brother. ¶¶ 86–88. HPPD officers called DCFS to report that Alfredo was living in the family home and selling drugs in B.A.s' presence, resulting in a DCFS investigation by Ramirez and Ruben Jimenez. ¶¶ 88, 92. Ramirez applied to the juvenile court for a removal order. ¶ 97. The SAC does not confirm whether Ramirez' application was granted. ¶ 97.

Ramirez, Lara, and Bueno removed B.A. on June 18, 2019 without a warrant. ¶ 98.[3] Sometime afterward (date unclear), Ramirez and non-movant Bueno filed a detention report and Ronces filed a dependency petition. ¶¶ 99–100. The petition was sustained. ¶ 100. In one of his early placements, B.A. was mistreated, which various CSWs ignored. ¶¶ 103–105. B.A. was re-placed with Martha Urbina, who was designated as a non-relative extended family member (NREFM). ¶¶ 106, 110. While at Urbina's home, B.A. was "repeatedly sexually abused" by Urbina. ¶ 114. Urbina asked Karla to contribute funds to feed B.A. ¶ 116. Karla paid Urbina $250. ¶ 120. In July 2019, law enforcement responded to the Urbina residence due to a disagreement between Urbina and her adult son. ¶ 121. A DCFS investigation followed, during which a non-party CSW noticed B.A. locked in a room. ¶ 125. Escobedo, Lara, Jimenez, and Simons did not remove B.A. from the Urbina home and mis-documented various events in order to cover up their decision not to do so. ¶¶ 126–129.

On October 1, 2015, B.A. was re-placed with Josefina Rendon. ¶¶ 132–134. At various points (unspecified) during the dependency case, Karla was provided with bus passes that had no value. ¶ 139. She also was unable to drug test at a certain facility because CSWs neglected to alert the testing site that Karla was coming in advance. ¶

[3] The SAC uses the term "CSW," which, for purposes of clarity, Defendants submit is an acronym for "Children's Social Worker"—the universal job title of most frontline DCFS social workers.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

139. Salas and Lopez also told the juvenile court that Karla was not participating in domestic violence classes, which Plaintiffs contend is untrue. ¶ 139.

On October 14, 2016, B.A. was removed from Rendon's home because DCFS believed she was allowing B.A. to live with his parents; Salas and Lopez filed a detention report and Jimenez filed a dependency petition. ¶¶ 142-144. Between October 2016 and March 2017, B.A. was "cycled through shelters, group homes, and foster homes." ¶ 147. In one foster home, B.A. was molested by an "older foster kid." ¶ 148. B.A. ran away from the home, prompting DCFS to re-place him in a group home. ¶¶ 150–152. At the group home, B.A. was punched, giving him a black eye. ¶ 154. B.A. ran away from the group home, and was re-placed in another foster home, where he slept on a dirty floor with insects and lost weight due to food withholding. ¶¶ 155–158. Karla eventually spoke to a "regional administrator at DCFS" about the situation. ¶ 161. From May 2017–October 2017, Karla and Alfredo were in increasing contact with B.A. before he was sent home with Karla on October 9, 2017. ¶ 164.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## IV. ARGUMENT

Defendants preliminarily note the impropriety of the numerous factual revisions to the facts contained in the SAC. Defendants—all but Silva, Pacheco, Espinoza, and Bueno (who has still not appeared)—previously moved to dismiss the FAC ("MTD #1"). Silva, Pacheco, and Espinoza, who were served later-in-time, also moved to dismiss the FAC ("MTD #2). In ruling on MTD #1, the Court granted leave to amend only the mandatory duty claim. ECF No. 67, 12–13. The Court found that the mandatory duty claim did not sufficiently identify the sources of the duties it sought to vindicate. *Id.* at 11. In ruling on MTD #2, no leave to amend was permitted. ECF No. 68, at 10–11.

The SAC attempts to cure the mandatory duty claim's shortcomings. SAC ¶ 231. But Plaintiffs have also made dramatic changes to the *facts* that remained constant across two previous iterations of Plaintiffs' complaint. For the first time ever, B.A. is alleged to be a victim of sexual abuse and physical abuse in at least three

different homes, ¶¶ 114, 148, 154; HPPD now searched Karla's home not once, but twice—and "ransacked" it the second time, ¶¶ 88, 151; three new DOE defendants are tethered to specific allegations, ¶¶ 80, 89; and B.A. has now allegedly been seized without a warrant, ¶ 98.

The Court did not permit leave to amend any facts in its prior orders on the MTDs or in any other order, and Plaintiffs already exhausted the single amendment "as a matter of course" provided by Rule 15 when they filed the FAC. Consequently, these amendments to the facts have no legal effect and should be disregarded. As one district court has noted, "if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval." *Larry O. Crother, Inc. v. Lexington Ins. Co.*, No. 2:11-CV-00138-MCE, 2011 WL 1084201, at *2 (E.D. Cal. Mar. 21, 2011) (citing Alan Wright, 6 Federal Practice & Procedure: Civil 3d, § 1484, p. 685 (West 2010)).

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**A. <u>The first claim (§ 1983, 4th Amendment) fails to state a claim.</u>**

The first claim asserts a violation of § 1983 predicated on the Fourth Amendment. Plaintiffs claim that Ramirez and (non-movant) Bueno seized B.A. based on false allegations on June 18, 2015 and made false statements in a detention report, an "Addendum," and "the SDM Assessments." ¶¶ 97, 98, 171, 172. The claim is also alleged against Ronces, presumably for filing a petition. ¶ 100.

***(1.) <u>Relevant law.</u>*** "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" *Id.* at 633

(emphasis added by *Leer*) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

The Fourth Amendment "does two things": (1) prohibit unreasonable searches and seizures, and (2) specifies the conditions under which a warrant can be issued. *Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1075 (9th Cir. 2018). Critically, "[t]he Fourth Amendment does not require officers to get warrants." *Id.* But if they do, the warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 172 (1978). The Warrant Clause is "the bulwark of Fourth Amendment protection." *Id.* at 164. It requires, among other things, that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause. *Id.* at 165. In *Franks v. Delaware*, the Supreme Court held that a criminal defendant has the right, under the Fourth Amendment, to challenge the truthfulness of factual statements in a warrant affidavit. 438 U.S. 154 (1978). To support a § 1983 claim of judicial deception/*Franks* claim, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004).

***(2.) Absolute immunity (Defendant Ronces).*** Ronces is absolutely immune from liability for the lone act alleged against her: filing a dependency petition. "[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). As discussed in Part II, *supra*, dependency proceedings begin by a social worker filing a verified dependency petition. Ronces is accused of doing exactly this—initiating child dependency proceedings—and nothing else. Consequently, she is entitled to absolute prosecutorial immunity from liability under § 1983.

Plaintiffs emphasize that the petition was "perjured." ¶ 100. Prosecutors have,

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

at times, lost absolute immunity by stepping out of their roles as advocates and into that of a complaining witness by, for example, swearing to the truth of facts in an affidavit in support of an arrest warrant. *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). Because absolute immunity for social workers is derivative of prosecutors' immunity, social workers also lose immunity when functioning as complaining witnesses. *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc). But "[t]he mere use of the terms 'under penalty of perjury'" "does not turn [Ronces] into a complaining witness." *Mishler v. Clift*, 191 F.3d 998, 1009 (9th Cir. 1999).

Moreover, Plaintiffs fail to describe *how* the petition was perjured. Whether any of Ronces' allegedly false statements could make her a complaining witness is a question left unanswered by the SAC. Plaintiffs do not, for example, allege that Ronces, like the social worker in *Beltran*, had "included a three-page statement of facts describing [another worker's] investigation." 514 F.3d at 908. Ronces simply initiated dependency proceedings—quintessentially prosecutorial.

***(3.)*** ***Materiality/causation.*** Plaintiffs allege Ramirez "falsely swore there was probable cause to believe that continuance in the home of his parents was contrary to B.A.'s welfare" within a "Request for Removal Order" (RRO) filed with the juvenile court on June 15, 2015. ¶ 97. Three days later, on June 18, 2015, B.A. was seized by Ramirez and Bueno. ¶ 98. These allegations sound in *Franks*/judicial deception. The removal order sought by the RRO is identical to a warrant. *Greene v. Camreta*, 588 F.3d 1011, 1022 (9th Cir. 2009), *vacated in part as moot by* 563 U.S. 692 (2011) ("we hold that in the child abuse investigation context, a court order permitting the seizure of a child is the functional equivalent of a warrant."). But for the first time in this lawsuit, the SAC now alleges that the June 18, 2015 seizure was a warrantless one, ¶ 98, which raises several problems.

*(a.)* If the June 2015 seizure truly was warrantless, none of Ramirez' allegedly false statements within the RRO or Ronces' "perjured" petition should matter. The Court previously held that this claim was well-pleaded as to Ramirez based on the

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

notion that the falsified SDM assessments and detention report *resulted* in the seizure and placement of B.A. in foster care. ECF No. 67, at 6. By revising the facts to contend that these falsities did not successfully persuade the juvenile court judge to issue a warrant, Plaintiffs have pleaded themselves out of this claim. Plaintiffs cannot blame Ramirez' false statements in the RRO/warrant application for the seizure of B.A. if the judge did not actually issue the warrant on the basis of such statements. As to Ronces, the Court previously held that this claim was well-pleaded because the petition "report[ed] that, in violation of court orders, Mr. and Ms. Aranda resided in the home with B.A., thereby creating a substantial risk of harm to B.A." ECF No. 67, at 6 (citing FAC ¶ 102). In the SAC, Plaintiffs have deleted this allegation—again, Plaintiffs have pleaded themselves out of this claim. One cannot infer that Ronces' statements were material if the statements are not provided.

Moreover, the SDM assessments, the detention report, and Ronces' petition are immaterial to determining whether B.A.'s seizure was based on probable cause. All information necessary to show probable cause for the issuance of a warrant "must be contained within the four corners of a written affidavit given under oath." *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971). Consequently, the constitutionality of B.A.'s seizure cannot be determined by reference to statements in other court filings. And because the reasonableness inquiry required by the Fourth Amendment is objective, whether Ramirez and Ronces were motivated by obtaining federal foster funding for *Monell* purposes is irrelevant to individual liability. *Graham v. Connor*, 490 U.S. 386, 397 (1989). It is also unclear how statements in the petition could be material to a determination of probable cause because, as noted in Part II, *supra*, a dependency petition does not necessarily result in a removal—and no facts alleged permit a contrary inference.

*(b.)* Plaintiffs have no authority to amend their Fourth Amendment claim. In the prior MTD proceedings, Plaintiffs argued there was a "warrantless seizure of B.A. on *May 5, 2015*." ECF No. 53, 21:21 (emph. added). Defendants noted this accusation

could not save the FAC because it was not actually alleged. ECF No. 57, at 3:12. The Court did not address this un-alleged fact in its orders on the MTDs, and Plaintiffs were not given leave to amend any Fourth Amendment claim to add allegations of a warrantless seizure in May 2015—much less in *June 2015*. ECF Nos. 67, 68.

**B. <u>The third claim (§ 1983, 14th Amendment) fails to state a claim.</u>**

The Court has ruled that this claim is one for procedural due process, ECF No. 67, at 9, which "has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Analytically, courts assessing such claims must first identify the specific liberty interest; next, "[h]aving determined that [Plaintiffs] ha[ve] a liberty interest at stake, [they] must show a deprivation of that interest to have a cognizable Section 1983 claim." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006). In the context of procedural due process—as distinct from substantive due process—determining whether a deprivation occurred requires the Court to decide what process Plaintiffs were due. *Id.* at 999–1000.

***(1.) <u>Defendants Espinoza and Pacheco.</u>*** None of the allegations in the third claim concern Pacheco or Espinoza. ¶¶ 182–197. This is troubling for two reasons. First, as a factual matter, it is impossible to tell what conduct of theirs is being challenged, preventing the "individualized" causation inquiry that *Leer* demands. Looking outside the third claim, the deputies' liability might conceivably be based on either (1) making reports to DCFS or (2) testifying in dependency court. ¶¶ 68, 73, 80. The claim is doomed in either case. No facts suggest that reporting anything to DCFS affected the process Plaintiffs received. As for testifying, "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (emphasis in original); *Meyers*, 812 F.2d at 1154.

Second, as a legal matter, it is impossible to subject the conduct of Pacheco and Espinoza to any kind of constitutional analysis. In order to determine whether any

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

particular defendant's conduct amounts to a violation of procedural due process, a plaintiff must—as a preliminary matter—affirmatively identify the nature of the interest. Defendants understand the liberty interest at issue here to be one of familial association, ¶ 187; but it is far less clear *which* dimension of the familial association interest is in issue. "Familial association" is not a single constitutional behemoth. It includes many different liberty interests at varying levels of protection. For example, "[t]he right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000). Parents also have a protected liberty interest in visitation. *Brittain*, 451 F.3d at 999. But the procedures required to protect each interest are different. In the context of visitation, the Ninth Circuit has held that *post-deprivation remedies* are sufficient. 451 F.3d at 1000–01. For medical examinations, however, "the state is required to notify parents and to obtain judicial approval *before* children are subjected to investigatory physical examinations." 202 F.3d at 1141 (emphasis added). The SAC alleges facts that could fit either interest. It claims B.A. was given psychotropic drugs, sounding in *Wallis*. ¶ 160. They claim Karla begged for visitation, but was denied—sounding in *Brittain*. ¶ 157. Providing this clarity is uncomplicated: Plaintiffs simply need to pick an interest and plead it. Without doing so, numerous questions on the merits of this case will be impossible to answer—for example, whether the remedy of a *Franks* hearing (*i.e.*, in dependency, a "detention hearing") is sufficient to defeat this claim.

The most basic requirements of due process are the right to notice and the opportunity to be heard. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982). Assuming this level of process to be what Plaintiffs are due, the SAC fails to set forth colorable claims against Pacheco or Espinoza. Nowhere do Plaintiffs allege any facts that suggest Pacheco or Espinoza robbed Plaintiffs of their opportunity to be heard or prevented them from receiving notice of the juvenile court proceedings.

***(2.) Defendants Ronces and Ramirez.*** As alleged against Ronces and Ramirez,

the liberty interests are clear: the "right [] not to be separated without due process of law except in emergencies," ¶ 185 (Ramirez alone), and the "right[] to be free from unlawful dependency proceedings" (as to all Defendants) ¶¶ 185, 195. As with Pacheco and Espinoza, however, Plaintiffs do not contend that either Ramirez or Ronces caused a denial of the most basic procedural protections of notice or a hearing.

*(a.)* Ronces. The basis for Ronces' liability is the perjured petition. ¶ 192. As discussed in Part IV.A, *supra*, she is absolutely immune for this activity. Dismissal is also appropriate because it is impossible to infer causation. Plaintiffs allege that Ronces' use of perjury caused the separation of Plaintiffs' family. ¶¶ 100, 193, 195. Defendants do not dispute that the Fourteenth Amendment "guarantee[s] that parents and children will not be separated by the state without due process of law except in an emergency." *Wallis*, 202 F.3d at 1136. But the "individualized" causation inquiry does not tether the petition to the separation. Again, a dependency petition is a charging instrument that initiates court proceedings. It sets forth the legal and factual bases for a finding of juvenile court jurisdiction, not a finding that a child should be removed. The request to remove B.A. was filed by Ramirez a week earlier (June 15, 2015), ¶ 97, and he was already seized from his mother by the time Ronces filed the petition, ¶ 98 (seizure on June 18, 2015). Consequently, Ronces' dependency petition—whether "perjured" or not—is not the but-for cause of B.A.'s removal from his family.

As to the "right[] to be free from unlawful dependency proceedings," Plaintiffs have impermissibly revised this allegation in the SAC. The FAC asserted a right to be from "deception" in dependency proceedings, not "unlawful" proceedings. ECF No. 36, FAC, ¶ 188. By alleging that the liberty interest at stake was specifically *deception*, the FAC gave Defendants notice of the particular component of fair process that Plaintiffs allege was denied them. Defendants knew that Plaintiffs were not challenging *notice*, for example. But now Defendants and the Court are left to guess how Defendants rendered the juvenile proceedings "unlawful." This exercise in speculation is made all the worse by Plaintiffs' decision to eliminate the allegations that described

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

exactly how Ronces' petition was "perjured." Was it perjured because it informed Plaintiffs that a hearing was on the wrong date? Did it purport that DCFS was proceeding on allegations that B.A. was neglected, when in fact DCFS was litigating B.A.'s dependency for emotional abuse?

*(b.)* *Ramirez.* The factual bases for Ramirez' liability is her "fabrication" of the detention report and RRO. ¶¶ 183, 189. Plaintiffs insist that this constitutes "fabrication of evidence in a child abuse investigation." ¶ 185.

Plaintiffs conflate an *allegation* and the *evidence* used to prove an allegation. Plaintiffs accuse HPPD officers of creating a "report [that] was completely false" in that it claimed Alfredo was selling drugs in B.A.'s presence, and that Karla lived with Alfredo. ¶¶ 88, 89. Plaintiffs do not contend that any Defendant was involved in the fabrication of this report—only that DCFS "received" the report. ¶ 91. Plaintiffs only accuse Ramirez of failing to investigate the report. ¶¶ 93–96. While Plaintiffs do not describe the contents of Ramirez' RRO, they do claim the detention report alleged Karla "failed to protect B.A. from Alfredo's drug abuse in the home." ¶ 100. These allegations do not constitute a due process violation by Ramirez. If indeed the HPPD report was false, that is the fault of HPPD—and nobody else. It is also not clear how the report's falsity contributed to a *procedural* due process violation. At the hearing on the detention report (the detention hearing) Plaintiffs' task was simply to point out the falsity of the report to the juvenile court judge, who would require DCFS to prove its accusations with competent evidence. The only "false evidence" arguably alleged is the testimony by the deputies following the 2014 seizure, ¶ 80, not anything remotely close to Ramirez' filings. Plaintiffs, at best, allege that Ramirez failed to corroborate HPPD's report, but this does not save their claim: "Once he has probable cause, an officer is not ordinarily required to continue to investigate or seek further corroboration." *Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th Cir. 2009).

## C. The fourth and fifth claims (negligence/per se) fail to state claims.

***(1.) Insufficient factual allegations.*** Both the negligence and negligence per se

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

("negligence/per se," collectively) claims fail. Regarding negligence, the Court already found that "B.A. makes only conclusory statements with reference to each of the elements" of negligence as to Silva. ECF No. 68, at 8. The negligence claim does not allege any defendant-specific facts, so there is no credible argument that the it is alleged any better against the remaining defendants than it was with respect to Silva. Whatever new facts Plaintiffs may have snuck into the SAC are immaterial, given that Plaintiffs were not given leave to amend their negligence claim.

Regarding negligence per se, this claim is alleged against numerous defendants, yet nowhere in its 16 paragraphs are any facts alleged that name a specific defendant or mention specific conduct. Reading the SAC in the light most favorable to Plaintiffs, the lone factual allegation (¶ 218) suggests this claim is based on the placement of B.A. in an unlicensed foster home beginning on June 29, 2015. The SAC's emphasis on Urbina being unlicensed suggests that the negligence per se claim does ***not*** concern placement in any other facility. *E.g.*, ¶ 107. Consequently, this claim seems to concern Lara, who allegedly placed B.A. with Urbina. ¶ 108. But it is entirely unclear how Lara violated any mandatory duty. In the meandering recitation of alleged violations of regulations "In This Case", SAC 14:6, Plaintiffs never clarify how Lara—or anyone else—violated the various CDSS MPP sections or SDM tools in this case. ¶¶ 60–64. SDM tools, moreover, can be freely abandoned by social workers. *In re A.J.*, No. D059473, 2011 WL 6210669, at *8 (Cal. Ct. App. Dec. 13, 2011) (no error where SDM suggested reunification services be continued, but social worker recommended to court that services be terminated).

***(2.) <u>Defendants are immune.</u>***[4] The negligence/per se claims are barred by the immunity provisions of the California Government Claims Act: Government Code §§ 815.2(b), 820.2, and 821.6. *See Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456, 462, 469–69 (2007) (applying §§ 815.2(b), 820.2, 821.6 to negligence claim). Defendants are additionally immune from the

[4] All section (§) citations in Part IV.C.2 are to the California Government Code.

negligence per se claim under § 820.8.

*(a.)* Negligence/per se. Under § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Gov. Code § 821.6. Under § 820.2, "a public employee cannot be held liable for any injury resulting from 'his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused.'" *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000). It applies to "county social workers engaged in investigating allegations of child abuse" and provides "complete protection for the decision to investigate, to make an 'in-person response,' and for actions necessary to make a meaningful investigation." *Id.* at 1144–45. Section 815.2(b) provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." As the Court of Appeal in *Jenkins v. County of Orange* noted, "[w]eighing and presenting evidence are prosecutorial functions." 212 Cal. App. 3d 278, 284 (1989). The plaintiffs in *Jenkins* alleged, as the Plaintiffs allege here, that social workers "refused and failed to consider all of the evidence and thereby misrepresented information to the juvenile court." *Id.* at 283. *Jenkins* held that such "allegations are immune from liability." *Id.* (citing Gov. Code § 821.6). The facts of *Alicia T. v. County of Los Angeles* are similarly instructive. 222 Cal. App. 3d 369 (1990). There, plaintiffs alleged that there was "no credible evidence upon which to justify removal of Alicia from the custody of her parents." *Id.* at 875–76. Like Plaintiffs here, the *Alicia T.* plaintiffs "conclude[d] the County unlawfully removed Alicia from the custody of her parents and acted on 'incorrect, unsubstantiated, and insufficient information and therefore lacked probable cause.'" *Id.* at 876. The Court of Appeal held that the social workers were absolutely immune under §§ 820.2 and 821.6—and that "the County is similarly immune" under § 815.2(b). *Id.* at 88.

The Court has already found that "the relevant acts alleged by B.A." fall within

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

the scope of §§ 820.2 and 821.6. ECF No. 67, at 10. While the Claims Act makes exception for malice (§ 820.21), the Court has found that "[r]eview of the FAC shows no facts that rise to the level of malice as defined by the statute." *Id.* Again, the additional facts added by Plaintiffs have no legal effect on this analysis. The individual Defendants are immune from the negligence/per se claims under §§ 821.6 and 820.2, and their immunity also serves to immunize the County under § 815.2(b).

*(b.)* *__Additional negligence per se immunity.__* Defendants are immune from the negligence per se claim under Government Code §§ 820.2, 821.6, and 815.2(b) for the same reasons discussed above with respect to negligence. Specifically, under § 820.2, "social workers are entitled to immunity for their child removal and placement decisions in dependency proceedings." *Christina C. v. Cty. of Orange*, 220 Cal. App. 4th 1371, 1381 (2013). Lara is therefore immune from liability for placing B.A. with Urbina. Defendants are additionally immune under Government Code § 820.8, which states that "a public employee is not liable for an injury caused by the act or omission of another person." Gov. Code § 820.8. While § 820.8 acknowledges that a public employee can be liable for injuries "proximately caused by his own negligent or wrongful act or omission," *id.*, an employee is not responsible for the conduct of a coworker. Consequently, Lara's coworkers—*i.e.*, the remaining Defendants—cannot be held liable for her conduct under §§ 815.2(b) and 820.8.

***(3.)*** ***__Compliance with presentation requirements.__*** The Government Claims Act provides that a plaintiff "may not maintain an action for money or damages against a public entity unless first a written claim has been presented to the public entity and rejected in whole or in part." *Connelly v. Cty. of Fresno*, 146 Cal. App. 4th 29, 36–37 (2006) (citing Gov. Code §§ 810, 905, 905.2, 945.4). "Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *Id.* at 37 (citing *State of California v. Superior Court* (*Bodde*), 32 Cal. 4th 1234, 1245 (2004)). At the pleadings stage, "[b]efore a cause of action may be stated, a plaintiff must allege either compliance with this procedure or

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

circumstances excusing compliance." *Id.* (citing *Bodde*, 32 Cal. 4th at 1245).Where a claim concerns death or injury, it must be presented within six months after the accrual. Gov. Code § 911.2(a).

*(a.) Plaintiffs failed to present a claim within six months.* Plaintiffs allege that they presented their claim to the County on January 16, 2018, which they amended on January 31, 2018. ¶ 168. Consequently, all conduct occurring before July 16, 2017 is not timely. Unfortunately for Plaintiffs, not one defendant is alleged to have committed misconduct after that date. With respect to Morales and Luna, the SAC has been revised such that they are never even mentioned in the factual allegations. The only allegation against Silva is that she accused B.A. of giving himself a black eye in one of his foster placements sometime between October 2016 and March 2017, ¶¶ 147, 154, which is untimely by several months. The only allegations against Mejia are also from this same time period. ¶¶ 147–160. The latest allegations against the two Jimenez defendants are time-barred—the unspecified Jimenez filed a "perjured WIC 827 petition" on October 14, 2016, ¶ 144, while Ruben Jimenez was only involved in a referral in June 2015, ¶¶ 92–94. The latest allegation against Salas is that she sent a text message to Karla shortly after filing a detention report on October 14, 2016, ¶ 146, and Lopez is never mentioned after that date, ¶ 144. Escobedo, Ronces, Simons, and Lara disappear even earlier, and are never mentioned after 2015. ¶¶ 100 (Ronces), 98–124 (Lara), 128 (Simons), 116–131 (Escobedo). Consequently, when Plaintiffs presented their claim on January 16, 2018, none of the actions alleged were timely.

*(b.) Plaintiffs fail to allege any circumstances excusing compliance.* "[T]he Legislature has provided numerous ways to obtain relief from the claim presentation requirement." *Bodde*, 32 Cal. 4th at 1245; *see also Munoz v. State of California*, 33 Cal. App. 4th 1767, 1777 (1995) (discussing late-filed claims). First, if an injured party fails to file a timely claim, a written application may be made to the public entity for leave to present such claim. Cal. Gov. Code § 911.4(a). An injured party seeking leave to file an untimely claim must do so within one year. Cal. Gov. Code § 911.4(b).

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

The public entity "shall" grant the application to file a late claim if certain conditions are present. Cal. Gov. Code § 911.6(b); *see also*, *generally*, *J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 652 (2017) (discussing late claims by minors). The standard for granting leave notwithstanding (however permissive it might be), the requirement to actually present the application seeking leave in the first place is unforgiving. "Filing a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition." *Munoz*, 33 Cal. App. 4th at 1779. Second, if the public entity denies leave to file an untimely claim, Government Code section 946.6 authorizes the injured party to petition a court to determine the merit of a late-claim application. Cal. Gov. Code § 946.6; *J.M.*, 2 Cal. 5th at 653; *Munoz*, 33 Cal. App. 4th at 1777.

Plaintiffs do not allege they ever sought leave to file a late claim. Moreover, they do not allege whether such leave was *granted*—a more important question. And they do not allege that, if the County did not grant such leave, a court of competent jurisdiction judicially overrode the County's denial pursuant to Government Code § 946.6. Without such facts, the negligence/per se claims are untimely and barred.

**D. <u>The sixth claim (IIED) fails to state a claim.</u>**

The Court has already dismissed the IIED claim, and it did not provide leave to amend. ECF No. 67, at 11. It should be dismissed, again, on this basis alone.

**E. <u>The seventh claim (mandatory duty) fails to state a claim.</u>**

The mandatory duties identified by Plaintiffs require social workers to (1) have authority prior to removing a child, ¶ 208, (2) visit a child three times in the first 30 days in foster care, ¶ 210, (3) make monthly visits, ¶ 211, (4) make monthly contact with caregivers, ¶ 212, (5) place children in licensed or appropriate facilities, ¶ 213, even when making temporary placements, ¶ 214, and (6) complete SDM assessments on referrals, ¶ 215 ("Mandatory Duties," collectively). While the SAC clarifies the legal basis of this claim, it still fails to give notice to Defendants of the factual basis of this claim. Plaintiffs simply claim "Defendants did not exercise reasonable diligence

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

in discharging their duty to refrain from violating the constitutional rights of Plaintiffs," as "described in greater detail above." ¶ 233. But neither Morales nor Luna are alleged to have done *anything*. Silva is only alleged to have received a complaint about "what was going on" with B.A. in a foster placement, ¶ 154, which does not run afoul of any Mandatory Duties. Mejia allegedly placed B.A. in a group home and a foster home, ¶¶ 152, 157, but there is no indication that those homes were unlicensed or that she did not visit with sufficient frequency. Ruben Jimenez did not investigate something. ¶¶ 92–94. Another, unspecified Jimenez allegedly falsified contacts, ¶ 128, but the Mandatory Duties require only that contact be made with a specific frequency, not that it be documented any particular way. Escobedo is accused of *keeping* B.A. in an unlicensed home, ¶¶ 128, 129, 131, but not *placing* him there. The basis for liability against Simons is that she authored a false juvenile court report, ¶ 128, which the Mandatory Duties do not concern. Salas is accused of much wrongdoing—withholding information from the court, sending a taunting text message, and not documenting Karla's claims about Urbina—but none of it concerns the Mandatory Duties. ¶¶ 134–146. Lopez is accused of roughly the same conduct as Salas. *Id.* Ronces' sole action of filing a petition falls outside the scope of the Mandatory Duties as well. ¶ 100. And the facts do not clearly permit an inference Ramirez' removal was without authority or that Lara's placement of B.A. with Urbina was improper. Moreover, the claim is barred for failure to allege timely compliance with the presentation requirements of the Government Claims Act. *See* Part IV.C, *supra*.

**F. <u>The eighth claim (Bane Act) fails to state a claim.</u>**

The Court previously held that, because the Fourteenth Amendment claims survived as to Pacheco and Espinoza, the Bane Act claim against them was derivatively well-pleaded. ECF No. 68, at 9–10. Because the Fourteenth Amendment claim now fails, so too should the Bane Act claim. But they are also immune under state law for their acts of reporting DV to DCFS and testifying under the Child Abuse and Neglect Reporting Act (CANRA), as well as the litigation privilege.

CANRA is a California statute that "requires certain persons, called 'mandated reporters,' to report known or reasonably suspected child abuse or neglect." *Cuff v. Grossmont Union High Sch. Dist.*, 221 Cal. App. 4th 582, 589 (2013) (citing Penal Code § 11164, 11166). Such reports may be made to a law enforcement agency or "the county welfare department." *Id.* at 590 (citing Penal Code § 11165.9). CANRA provides that mandated reporters of child abuse are *absolutely* immune from liability. § 11172(a); *Robbins v. Hamburger Home for Girls*, 32 Cal. App. 4th 671, 679 (1995). Significantly, "whether immunity applies to a mandatory reporter is not dependent upon whether plaintiffs could prove that defendants made the report negligently or with knowledge of its falsity." *Watson v. Cty. of Santa Clara*, 468 F. Supp. 2d 1150, 1156 (N.D. Cal. 2007). Peace officers, including deputy sheriffs, are mandated reporters. Penal Code §§ 830.1(a), 11164(a), 11165.7(a)(19). Defendants Pacheco and Espinoza are alleged to be deputy sheriffs, ¶¶ 26, 27, and cannot be held liable under state law for the action of reporting DV to DCFS. Under California Civil Code § 47(b), statements made in judicial proceedings cannot serve as the basis for a tort action, regardless whether the statements were made with malice or an intent to harm. *Moore v. Conliffe*, 7 Cal. 4th 634, 637, 640 (1994); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002). This immunity, poorly named as a "litigation privilege," functions not as an evidentiary privilege, but as a complete bar to liability. *Oren Royal Oaks Venture v. Greenberg*, 42 Cal. 3d 1157, 1168 (1986); *Cotton v. Cotton*, No. A139072, 2014 WL 5488828, at *9 (Cal. Ct. App. Oct. 30, 2014) (applying to Bane Act); *Skerston v. Sheehan*, No. G045401, 2012 WL 610817, at *4 n.8 (Cal. Ct. App. Feb. 24, 2012) (same). So the deputies are not liable for their acts of testifying in the juvenile court, either. Finally, this claim, like the other state claims, is barred for failure to allege timely compliance with the California Government Claims Act.

DATED: September 29, 2019

**PETERSON • BRADFORD • BURKWITZ**

By: */s/ Ryan A. Graham, Esq.*
Avi Burkwitz, Esq.
Ryan A. Graham, Esq.,
*Attorneys for Defendants (except Bueno)*

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 100 North First Street, Suite 300, Burbank, California 91502.

On September 29, 2019, I served the foregoing document described as:

**Defendants' Notice of Motion and Motion to Dismiss the Second Amended Complaint under Rule 12(b)(6); Memorandum of Points and Authorities**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED MAILING LIST**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 29, 2019 at Burbank, California.

*/s/ Ryan A. Graham, Esq.*

Ryan A. Graham, Esq.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

# SERVICE LIST

**RE:** **Karla Garcia Aranda, et al. v. County of Los Angeles, et al.**

**Case No.:** 2:19-CV-01770-RGK-RAO

Dan Stormer
Brian D Olney
Hadsell Stormer and Renick LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103
626-585-9600
626-577-7079 (fax)
dstormer@hadsellstormer.com
bolney@hadsellstormer.com

**Attorney for Plaintiffs B.A., Alfredo Aranda, and Karla Aranda Garcia**

Olu K Orange
Orange Law Offices PC
3435 Wilshire Boulevard Suite 2910
Los Angeles, CA 90010
213-736-9900
213-417-8800 (fax)
o.orange@orangelawoffices.com

**Attorney for Plaintiffs B.A., Alfredo Aranda, and Karla Aranda Garcia**

Rachel Steinback
Rachel Steinback Law Offices
P O Box 291253
Los Angeles, CA 90029
213-537-5370
213-232-4003 (fax)
steinbacklaw@gmail.com

**Attorney for Plaintiffs B.A., Alfredo Aranda, and Karla Aranda Garcia**